UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CONTI 11. CONTAINER                           CIVIL ACTION
SCHIFFARTS-GMBH & CO. KG M.S.
"MSC FLAMINA"

VERSUS                                        No. 22-1114

MSC MEDITERRANEAN SHIPPING                    SECTION: "J"(3)
COMPANY S.A.

## ORDER & REASONS

Before the Court is a *Motion to Dismiss* **(Rec. Doc. 9)** filed by Defendant, MSC

Mediterranean Shipping Company S.A. ("MSC"); an opposition (Rec. Doc. 12) filed by

Plaintiff, Conti 11. Container Schiffarts-GmbH & Co. KG M.S. "MSC FLAMINIA"

("Conti"); and a reply (Rec. Doc. 15) filed by MSC. Having considered the motions and

legal memoranda, the record, and the applicable law, the Court finds that the motion

should be denied.

## FACTS AND PROCEDURAL BACKGROUND

On or about November 3, 2000, Conti, a German corporation based in

Hamburg, Germany, and MSC, a Swiss corporation based in Geneva, Switzerland,

executed a Charterparty in which Conti, as owner, chartered the M/V MSC

FLAMINIA ("FLAMINIA") to MSC, as charterer. At all pertinent times to this

litigation, Conti was the owner of the FLAMINIA. The Charterparty required that all

disputes arising out of the agreement would be submitted to arbitration in London.

Over the course of the next twelve years, the FLAMINIA called at ports around the

1

world, including the Port of New Orleans, carrying tens of thousands of cargo containers from one port to another.

On June 30, 2012, the FLAMINIA arrived at the New Orleans Terminal. The following day, three tanks of 80% divinylbenzene ("DVB80") were loaded into the number four hold of the vessel. Notably, if DVB80 is not properly maintained at or below a specific temperature, it will spontaneously undergo a process called "auto-polymerization," which results in a rapid increase in temperature and the emission of flammable vapors. The material data safety sheet for DVB80 requires that it be stored at temperatures below eighty degrees Fahrenheit. Nine days before the three tanks of DVB80 were loaded onto the FLAMINIA, they were delivered to the New Orleans Terminal where they were stored outdoors. Once loaded onto the FLAMINIA, the tanks of DVB80 were stowed below deck. On July 1, 2012, the FLAMINIA departed the Port of New Orleans and, thirteen days later, on July 14, 2012, while the FLAMINIA was transiting the Atlantic Ocean, the tanks of DVB80 exploded, and a fire occurred aboard the vessel. This explosion and fire resulted in the deaths of three crewmembers, extensive damage to the cargo onboard, and over $100 million in damages to the FLAMINIA.

Litigation ensued in the Southern District of New York, including Conti's limitation action. The New York federal court trifurcated the case into separate trials on causation, liability, and damages. While the litigation progressed in New York, Conti pursued its arbitral claims against MSC in London under the Charterparty. The arbitration panel in London held that MSC had breached the November 3, 2000

Charterparty and is liable to Conti for approximately $200 million. To date, MSC has paid about $30 million. Conti filed the instant action seeking confirmation of the arbitration award pursuant to The Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention"), and MSC filed the instant motion to dismiss alleging that this Court lacks personal jurisdiction over MSC.

## LEGAL STANDARD

Rule 12(b)(2) of the Federal Rules of Civil Procedure permits dismissal of a suit for lack of personal jurisdiction. Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists. *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). The plaintiff need not, however, establish jurisdiction by a preponderance of the evidence; a prima facie showing suffices. *Id.* The court must accept the plaintiff's uncontroverted allegations and resolve all conflicts between the facts contained in the parties' affidavits and other documentation in favor of jurisdiction. *Id.*

A federal court must satisfy two requirements to exercise personal jurisdiction over a nonresident defendant. *Pervasive Software Inc. v. Lexware GmbH & Co. Kg*, 688 F.3d 214, 220 (5th Cir. 2012). First, the forum state's long-arm statute must confer personal jurisdiction. *Id.* Second, the exercise of jurisdiction must not exceed the boundaries of the Due Process Clause of the Fourteenth Amendment. Id. (citing *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999)). The limits of the Louisiana long-arm statute are coextensive with constitutional due process limits. *Jackson v. Tanfoglio Giuseppe, SRL*, 615 F.3d 579, 584 (5th Cir. 2010) (citing *Walk*

*Haydel & Assocs. v. Coastal Power Prod. Co.*, 517 F.3d 235, 242-43 (5th Cir. 2008)). Therefore, the inquiry is whether jurisdiction comports with federal constitutional guarantees. *Id.*

The Due Process Clause of the Fourteenth Amendment guarantees that no federal court may assume jurisdiction in personam of a non-resident defendant unless the defendant has certain "minimum contacts" with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Sufficient minimum contacts will give rise to either specific, "case-linked" jurisdiction or general, "all-purpose" jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

Specific jurisdiction is confined to adjudication of "issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* In order to establish specific jurisdiction, a plaintiff must show that "(1) there are sufficient (i.e., not 'random fortuitous or attenuated') pre-litigation connections between the non-resident defendant and the forum; (2) the connection has been purposefully established by the defendant; and (3) the plaintiff's cause of action arises out of or is related to the defendant's forum contacts." *Pervasive Software*, 688 F.3d at 221; *accord Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–76 (1985). The defendant can then defeat the exercise of specific jurisdiction by showing that it would be unreasonable. *Burger King*, 471 U.S. at 476–77; *Pervasive Software*, 688 F.3d at 221–22.

## DISCUSSION

MSC argues that this Court lacks specific personal jurisdiction over it in this arbitration award confirmation action.[1] (Rec. Doc. 9-1, at 11). MSC contends that the relevant underlying litigation in the personal jurisdiction analysis is *not* MSC's breach of the Charterparty but, rather, the issue of where foreign arbitral awards are enforceable under the Convention. (*Id.* at 12). MSC relies upon the Supreme Court's reasoning in *Vaden v. Discover Bank*, 556 U.S. 49 (2009) and *Badgerow v. Walters*, 142 S. Ct. 1310 (2022) to assert that once an arbitration award has been issued, the original underlying claims are no longer operative in an enforcement action. (*Id.* at 13). In opposition, Conti argues that MSC's reliance on the above cases is misplaced because those decisions regarded subject matter jurisdiction over actions to compel and confirm domestic arbitration awards. (Rec. Doc. 12, at 16). Here, Conti contends, the relevant inquiry is how the court should regard personal jurisdiction over actions to confirm foreign arbitration awards. (*Id.* at 17). The proper personal jurisdiction inquiry in this case, Conti asserts, "is whether the beneficiary of an award can show he or she sustained an injury caused by the defendant's forum activities in connection with the claim that led to the arbitration as opposed to an injury caused by the defendant's forum activities in connection with the arbitration proceeding itself." (*Id.* at 12) (quoting *Compania de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1287 (10th Cir. 2020)).

---

[1] MSC also contends that this Court lacks general personal jurisdiction over it, (Rec. Doc. 9-1, at 8–11), but Conti does not dispute this contention, (Rec. Doc. 12, at 8 n.19). Therefore, the Court will focus solely on specific personal jurisdiction.

## I.     PERSONAL JURISDICTION UNDER THE FEDERAL ARBITRATION ACT

A confirmation action under the Convention "is a summary proceeding in nature, which is not intended to involve complex factual determinations, other than a determination of the limited statutory conditions for confirmation or grounds for refusal to confirm." *Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007); *accord Argentine Republic v. Nat'l Grid PLC*, 637 F.3d 365, 369 (D.C. Cir. 2011). This more limited focus means that "[t]he party opposing enforcement of an arbitral award has the burden to prove that one of the seven defenses under the New York Convention applies." *Zeiler*, 500 F.3d at 164; *see also CEEG (Shanghai) Solar Sci. & Tech. Co. v. LUMOS LLC*, 829 F.3d 1201, 1206 (10th Cir. 2016) ("As the party opposing enforcement of the arbitral award, LUMOS bears the burden of proving that one of the defenses applies."). In consideration of these substantive and procedural features of an action to confirm an arbitration award, the Tenth Circuit found that

> [Th]e proper jurisdictional inquiry is whether the beneficiary of an award can show he or she sustained an injury caused by the defendant's forum activities in connection with the claim that led to the arbitration, as opposed to an injury caused by the defendant's forum activities in connection with the arbitration proceeding itself.

*Compania de Inversiones Mercantiles*, 970 F.3d at 1287. The Tenth Circuit found "that contacts relating to the underlying claim (i.e., the formation and alleged violation of the 2005 Shareholder Agreement) are pertinent." *Id.* at 1285. The Due Process Clause emphasizes that "a court may exercise specific personal jurisdiction only if 'the litigation results from alleged *injuries*' that arise out of or relate to activities by the defendant which were purposefully directed at the forum. *Id.* at 1286

(quoting *Burger King*, 471 U.S. at 723–73). The guidance of the Due Process clause, the Tenth Circuit reasoned, makes more sense in the context of confirming an arbitration award "if applied with an eye toward the underlying dispute" because personal jurisdiction turns on due process principles, not the elements of a given claim. *Id.* "[A]n action to confirm or enforce an arbitral award does not involve a conventional 'injury,'" and therefore, to determine whether the court has personal jurisdiction to confirm an arbitral award, the Tenth Circuit reasoned that a federal court should look to the underlying claim that led to the arbitration. *Id.*

This decision by the Tenth Circuit is in line with the decisions of at least three other circuits. *See Telcordia Tech Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 178 (3d Cir. 2006) (analyzing contacts between the underlying dispute and the forum before concluding that personal jurisdiction existed to confirm foreign arbitration award); *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 104 (2d Cir. 2006) (rejecting argument, in Convention proceeding seeking to vacate arbitration award, that only contacts related to the arbitration were relevant to personal jurisdiction); *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123-24 (9th Cir. 2002) (analyzing underlying events that led to arbitration in evaluating personal jurisdiction in a confirmation action). Moreover, another section of this Court, in evaluating whether the court had personal jurisdiction over the defendant, looked to the contract underlying the arbitration award. *Italtrade Int'l, USA, L.L.C. v. Sri Lanka Cement Corp.*, No. 00-2458, 2002 WL 59399, at *2 (E.D. La. Jan. 15, 2002) ("The contracts giving rise to this case were not

negotiated, performed, nor in any way were they associated with the State of Louisiana.").

MSC, however, argues that the above decisions are foreclosed by the Supreme Court's recent decision in *Badgerow* that relied upon its reasoning years earlier in *Vaden*. (Rec. Doc. 15, at 5). In *Vaden*, the Supreme Court held that a federal court may "look through" a domestic arbitration petition under 9 U.S.C. § 4 to compel arbitration to determine whether the court has jurisdiction over the petition. 556 U.S. at 62. Section 4 states that "any United States district court which, save for [the arbitration] agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties." The Supreme Court reasoned that

> [t]he phrase "save for [the arbitration] agreement" indicates that the district court should assume the absence of the arbitration agreement and determine whether it "would have jurisdiction [ ]" without it. Jurisdiction over what? The text of § 4 refers us to "the controversy between the parties." That phrase . . . is most straightforwardly read to mean the "substantive conflict between the parties."

*Vaden*, 556 U.S. at 62–63 (citing *Discover Bank v. Vaden*, 396 F.3d 366, 369–372 (4th Cir. 2005). Therefore, the Supreme Court held that a federal court asked to compel arbitration should "look through" the dispute to determine whether it has subject matter jurisdiction over the underlying dispute. *Id.* at 70. Recently, the Supreme Court in *Badgerow* addressed whether a federal court can "look through" the application to confirm, vacate, or modify an arbitral award. *Badgerow*, 142 S. Ct. at 1311. The Supreme Court held that a federal court, in determining whether it has subject matter jurisdiction to decide an application to confirm, vacate, or modify an

arbitral award, looks only to the application actually submitted to the court, and it does not "look through" the application to the underlying substantive controversy between the parties. *Id.* The Supreme Court reasoned that because 9 U.S.C. §§ 9 & 10, the sections of the Federal Arbitration Act that permit a party to apply to the court to confirm, or alternatively to vacate, a domestic arbitral award, do not contain the distinctive "look through" language that §4 did in *Vaden*, "a court may only look to the application actually submitted to it in assessing its jurisdiction." *Id.* at 1314.

In opposition, Conti contends that MSC's reliance upon the *Vaden* and *Badgerow* decisions are improper because they dealt with subject matter jurisdiction, whereas, here, the issue before the Court is personal jurisdiction. (Rec. Doc. 12, at 17). Moreover, Conti asserts that the domestic arbitration provisions in Chapter One of the Federal Arbitration Act ("FAA") that the Supreme Court analyzed in *Vaden* and *Badgerow* are unlike the Convention's foreign arbitration provisions in Chapter Two of the FAA. (*Id.*). Conti argues that the "look through" language that the Supreme Court found lacking in §§ 9 & 10 in *Badgerow*, is present here in § 204. (Rec. Doc. 12, at 17). An arbitral award confirmation action "may be brought in any such court in which *save for* the arbitration agreement an action or proceeding with respect to the controversy between the parties could be brought." 9. U.S.C. § 204 (emphasis added). In reply, MSC contends that § 204 applies only to venue, and therefore, does not authorize this Court to look to the underlying claims when assessing personal jurisdiction. (Rec. Doc. 9-1, at 14). Moreover, MSC points to the decision of the only court to consider personal jurisdiction in the arbitration context since the *Badgerow*

9

decision: *Balan v. Tesla Motors Inc.*, No. 19-67, 2022 WL 2192872 (W.D. Wash. June 16, 2022). (Rec. Doc. 15, at 7). In *Balan*, the court relied upon *Badgerow's* reasoning that an arbitration award "is no more than a contractual resolution of the parties' dispute . . . ." *Id.* at *3 (quoting *Badgerow*, 142 S. Ct. at 1316–17). The court looked only to the contract at issue, the arbitration award, in analyzing the defendant's purposeful availment. *Id.*

> Here, the contract at issue is the arbitration award, and the arbitration took place in San Francisco. Nothing about the arbitration relates to Washington and [the defendant] does not appear to have performed any type of conduct related to the arbitration that promotes business within the State. [The plaintiff] has failed to establish that the arbitration and outcome are sufficient for [the defendant] to have purposefully availed himself of Washington.

*Id.* Thus, the court determined that it lacked personal jurisdiction over the defendant. *Id.* Here, MSC urges this Court to follow the *Balan* court's reasoning and only look to the arbitration award at issue to determine whether it has personal jurisdiction over MSC. (Rec. Doc. 15, at 7). Notably, however, both *Balan* and *Badgerow* involve domestic arbitrations, and not foreign arbitration under the Convention, like the case at issue here.

Therefore, the Court must analyze the language of the Convention to determine if, and how, the Supreme Court's reasoning in *Vaden* and *Badgerow* applies to the Convention. The confirmation statute of the Convention, 9 U.S.C. § 207, states that "any party to the arbitration may apply to any court having jurisdiction under [Chapter Two] for an order confirming the award as against any other party to the arbitration." Therefore, the Court must take a step back and look at the

jurisdiction provisions of Chapter Two. Chapter Two of the FAA provides that "[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States." 9 U.S.C. § 203. Additionally, "[a]n action or proceeding over which the district courts have jurisdiction pursuant to section 203 of this title may be brought in any such court in which *save for* the arbitration agreement an action or proceeding with respect to the controversy between the parties could be brought . . . ." *Id.* at § 204 (emphasis added). Therefore, § 203 provides federal courts with subject matter jurisdiction over actions that arise under the Convention. This is in contrast to the domestic arbitration provisions of the FAA in Chapter One which require the court, as held in *Vaden*, to look through the arbitration agreement to the underlying dispute for subject matter jurisdiction.

Moreover, § 204, dealing with the venue for Convention proceedings, does not have a directly comparable statute in Chapter One of the FAA. Instead, in domestic arbitration proceedings, courts construe § 4 as the venue provision. *See, e.g., Pro. Transp., Inc. v. Am. Cas. Co. of Reading, PA,* No. 3:06CV83, 2007 WL 30554, at *3 (S.D. Ind. Jan. 3, 2007). Specifically, § 4 states, "[t]he hearing and proceedings, under such [arbitration] agreement, shall be within the district in which the petition for an order directing such arbitration is filed." This venue directive of § 4 is mandatory and has been interpreted to require "a geographic link between the site of the arbitration and the district which, by compelling arbitration or directing its scope, exercises preliminary control." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 327 (7th Cir. 1995). Therefore, when the parties agree to arbitrate in a particular

11

forum, only a district court in that forum has authority to compel arbitration under §
4. *See Kawasaki Heavy Indus., Ltd. v. Bombardier Rec. Prods., Inc.*, 660 F.3d 988,
997 (7th Cir. 2011); *Ansari v. Qwest Commc'ns Corp.*, 414 F.3d 1214, 1219–20 (10th
Cir. 2005); *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1018
(6th Cir. 2003). Here, the applicable statute governing venue under the Convention,
§ 204, states that venue is proper in district courts where the action could have been
brought *save for* the arbitration agreement with respect to the controversy between
the parties. Thus, § 204, the Convention's venue statute, is comparable to § 4, the
domestic arbitration jurisdiction statute, which permits courts to "look through" the
agreement to the underlying dispute to find jurisdiction in which to compel
arbitration. Thus, in proceedings to compel arbitration under the Convention,
pursuant to § 203, jurisdiction is proper in any federal court, and, pursuant to § 204,
venue is proper in any district court that would have proper venue over the
underlying dispute between the parties.

While personal jurisdiction is not directly discussed in Chapter Two, it would
only make sense for the personal jurisdiction analysis under the Convention to follow
that of venue because it would lead to irrational results if the personal jurisdiction
analysis could not "look through" the arbitration agreement but the venue analysis
could. Moreover, in evaluating whether a federal court was the proper venue to
confirm international arbitration awards, courts have used personal jurisdiction
analyses. In *Audi NSU Auto Union Aktiengesellschaft v. Overseas Motors, Inc.*, the
court reasoned that the Eastern District of Michigan was a proper venue because the

respondent was incorporated in Michigan and had its principal place of business there. 418 F. Supp. 982, 984 (E.D. Mich. 1976). This analysis is identical to that of a court analyzing where a corporation has general personal jurisdiction. "With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . for general jurisdiction.'" *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Next, in *3573522 Canada Inc. v. North Country Natural Spring Water, Ltd.*, the court reasoned that the Eastern District of Pennsylvania was not the proper venue because the parties had no significant ties to that district apart from the fact that the arbitration occurred there. 210 F.R.D. 544, 545 (E.D. Pa. 2002). This analysis is comparable to that of specific personal jurisdiction because specific jurisdiction is confined to adjudication of "issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 919. Moreover, when it comes to corporation defendants, the venue and personal jurisdiction analysis are tied to one another.  Under 28 U.S.C. § 1391(b), a civil action may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located" For purposes of venue, a defendant corporation "shall be deemed to reside . . . in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c). Therefore, this overlap, in conjunction with previous courts' interpretation of § 204's venue provisions, leads this Court to find that § 204 applies to personal jurisdiction as well as venue.

However, the above evaluation is applicable to compelling arbitration, not confirming an arbitral award, so the Court will next turn to an analysis of Chapter One's confirmation statute versus Chapter Two's. Pursuant to § 9, as analyzed by *Badgerow* and *Balan*, federal courts are not permitted to "look through" a domestic arbitration agreement when determining either subject matter or personal jurisdiction. Section 9 states

> [i]f the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.

Because this statute lacks the "look through" language that *Vaden* relied upon, as detailed above, the *Badgerow* and *Balan* court determined that in confirming domestic arbitral awards, courts must only look to the arbitration agreement itself. However, the confirmation statute of Chapter Two looks drastically different, and simply states, "any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration." 9 U.S.C. § 207. Thus, unlike the Chapter One confirmation statute, § 207 allows for jurisdiction over confirmation of arbitral awards to any court that has jurisdiction under Chapter Two. This means that for subject matter jurisdiction, any federal court is proper because arbitration agreements under the Convention are given federal question jurisdiction, and venue is proper, per the "look through"

14

language of § 204, in any district that has proper venue over the underlying dispute between the parties. Under the Convention, the same jurisdictional analysis applies to compelling and confirming arbitral awards. Therefore, a federal court, in determining whether it has personal jurisdiction to decide an application to compel or to confirm an arbitral award, may "look through" the application to the underlying substantive controversy between the parties.

## II.  SPECIFIC PERSONAL JURISDICTION OVER MSC

Now that the Court has determined that it may look to the underlying dispute between MSC and Conti to determine personal jurisdiction, the Court will look to the individual facts of this case. First, both MSC and Conti agree that to establish specific personal jurisdiction, three factors must be satisfied: (1) that MSC purposefully directed its activities toward Louisiana or purposefully availed itself of the privileges of conducting activities here; (2) that Conti's cause of action, the underlying breach of contract dispute, arises out of or relates to MSC's contacts with Louisiana; and (3) that the exercise of jurisdiction is fair and reasonable. (Rec. Doc. 12, at 8); (Rec. Doc. 15, at 1–2). The primary disagreement is with respect to the second factor. MSC argues that this Court lacks specific personal jurisdiction over it because it has no substantial connections with this forum. (Rec. Doc. 9-1, at 14). The underlying dispute between MSC and Conti involves a breach of contract, MSC contends, and this contract has no relation to Louisiana. (*Id.* at 16). MSC asserts that the contract was between foreign parties, MSC is Swiss and Conti is German, and the contract was entered into in Hamburg, Germany. (*Id.* at 2–3). Additionally, MSC avers that the

contract envisioned performance worldwide over many years, and "encompassed for more than these three cargo containers on this single voyage." (*Id*. at 16). Finally, MSC argues that the parties stipulated for the resolution of disputes under the contract in London applying English law. (*Id*. at 3).

Next, MSC contends that it was not the specific loading of the DVB80 containers that gave rise to the breach of contract, instead,

> it was the booking of the cargo in Texas, the acceptance of the DVB80 containers by MSC's dangers goods department in [Belgium], and, possibly, the stowage of those containers below deck per the stowage plan developed in South Carolina that resulted in the breach of the charter party, with the physical loading of the containers in New Orleans being simply a downstream consequence of those actions.

(*Id*. at 16). In opposition, Conti argues that MSC purposefully directed the FLAMINIA to New Orleans, and MSC purposefully directed the containers of DVB80 onto the vessel in New Orleans. (Rec. Doc. 12, at 19). The arbitration panel in London, Conti asserts, found that the explosive cargo was improperly loaded without Conti's informed consent. (*Id*.). Because this loading happened in New Orleans, Conti avers that this Court has specific personal jurisdiction over MSC. (*Id*.).

The Supreme Court recently addressed personal jurisdiction and reasoned that "[n]one of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do. As just noted, our most common formulation of the rule demands that the suit 'arise out of *or relate to* the defendant's contacts with the forum.'" *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021) (citations omitted). "[T]he back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal

showing." *Id.* The essential foundation of specific personal jurisdiction is a "relationship among the defendant, the forum, and the litigation." *Id.* at 1028 (quoting *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 414 (1984)).

Here, the London arbitrators' "Reasons for and Forming Part of Second Partial Final Award Dated 30 March 2021" began with the statement that "[i]t is not controversial that the explosion was a consequence of the auto-polymerisation of one or more tanks of 80% divinylbenzene ("DVB") which had been loaded onto no. 4 at New Orleans on 1 July 2012 ("the Cargo")," (Rec. Doc. 12-1, at 4). After a thoughtful and well-reasoned decision, they concluded that "MSC was in breach of clause 78 of the Charterparty in shipping the Cargo otherwise than in accordance with the IMDG Code." [2] (*Id.* at 142). In fact, MSC admitted that it was in breach of clause 78 of the charter, on the basis that the DVB80 was in fact prohibited cargo under the IMDG Code. (*Id.* at 59). Pursuant to the reasoning in *Ford Motor Co. v. Montana Eighth Judicial District*, for this Court to have specific personal jurisdiction over MSC, the breach of clause 78 of the Charterparty must relate to MSC's contacts with Louisiana. MSC breached clause 78 when it loaded DVB80 onto the FLAMINIA in New Orleans. Although the Court recognizes that the loading and shipping of the DVB80 out of New Orleans may be a "downstream consequence" of actions taken in other forums, the breach of contract dispute nonetheless relates to MSC's contacts with Louisiana.

---

[2] Clause 78 requires compliance with "IMO Regulations, any mandatory local regulations and requirements of the vessel's flat state and the load, discharge and trading ports/ routes of the vessel. Every dangerous/hazardous cargo/containers must be accompanied by a container packing certificate and special manifest delivered to vessel's command before loading the relevant containers/cargo." (*Id.* at 7).

The DVB80 could not have been on the FLAMINIA, and subsequently caused the explosion, if it was not loaded and shipped in New Orleans. The loading and eventual shipping of the DVB80 out of New Orleans by MSC constitutes a relationship among the defendant (MSC), the forum (Louisiana), and the litigation (breach of clause 78). Therefore, because Conti's cause of action, the underlying breach of contract dispute, relates to MSC's contacts with Louisiana, this Court finds that it has personal jurisdiction over MSC to confirm the arbitral award.

## III.   PERSONAL JURISDICTION AND LETTERS OF UNDERTAKING

However, even if the underlying breach of contract dispute did not give this Court specific personal jurisdiction over MSC, the Letter of Undertaking ("LOU") issued by MSC waives MSC's personal jurisdiction defense. Conti argues that MSC's issuance of a LOU to Conti shows that MSC has submitted to this Court's jurisdiction. (Rec. Doc. 12, at 19–20). In the LOU, MSC's insurer promised "to pay Conti any judgment up to $220,000,000 *issued by this Court* in Conti's favor in exchange for Conti's agreement not to arrest, attach, or otherwise interfere with MSC's vessels or initiate any other proceedings to enforce the arbitration award that is the subject of this case." (*Id.* at 20). In reply, MSC contends that Conti's concerns about the LOU are misplaced because it deliberately elected not to attach MSC's property in the Eastern District of Louisiana and instead signed the LOU. (Rec. Doc. 15, at 9). MSC asserts, "[t]he fact that Conti has apparently decided to forego any resort to *quasi in rem* jurisdiction in this case does not justify the disregard of MSC's Constitutional rights under the Due Process Clause." (*Id.*).

In *Trafigura Beheer B.V. v. M/T PROBO ELK*, the Fifth Circuit found that when a ship's underwriters entered into a LOU, agreeing to appear as claimants in the suit and pay any final judgments up to $775,000, they submitted to the court's jurisdiction by virtue of the LOU. 266 F. App'x 309, 310–11 (5th Cir. 2007). Specifically, the LOU stated

> [i]t is further intended by this undertaking that the rights of Trafigura Beheer BV Amsterdam and of the M/T PROBO ELK and her claimant be, and for all purposes shall be taken to be, consistent with the M/T PROBO ELK having been arrested under process issued out of the United States District Court for the Southern District of Texas at Houston and released by the filing of a release bond . . . ."

*Id.* at 310 n.1. Moreover, the Fifth Circuit has reasoned that LOU's are "sufficient to perfect *in rem* jurisdiction in the absence of an arrest of the vessel." *Panaconti Shipping Co., S.A. v. M/V Ypapanti*, 865 F.2d 705, 707 (5th Cir. 1989) (citing *Continental Grain Co. v. Federal Barge Lines, Inc.*, 268 F.2d 240 (5th Cir. 1959)). "A traditional letter of undertaking provides that, in consideration of the vessel not being seized and released on bond, the vessel owner will file a claim to the vessel and pay any judgment rendered against the vessel even if the vessel itself is subsequently lost." *Id.* at 707–08 (citing *Cactus Pipe & Supply Co. v. M/V Montmartre*, 756 F.2d 1103, 1107 (5th Cir. 1985)). In *Panaconti Shipping Co., S.A. v. M/V Ypapanti*, the Fifth Circuit analyzed a stipulation to determine if it could be construed as a LOU. *Id.* at 708. In construing the stipulation as a LOU, the Fifth Circuit reasoned that the owner of the vessel waived jurisdictional defenses and agreed to litigate the dispute in that forum. *Id.* Although there was "no express agreement in the stipulation to file

19

a formal claim of owner, [the defendant] did execute the document in the role of 'claimant' as well as defendant." *Id.*

Considering the Fifth Circuit's reasoning, the Court will now turn to the LOU at issue. Here, the LOU states that

> In consideration of your refraining from arresting, re-arresting, attaching, detaining, and/or interfering in any other way with the use or trading of any and all vessels, bunkers, funds, or other property or asset belonging to MSC Mediterranean Shipping Company S.A. ("MSC"), or in the same or associated control, ownership or management of MSC worldwide, and in consideration of your agreeing not to bring any proceedings for the enforcement of the Awards outside the English jurisdiction in any other court other than the United States District Court, Eastern District of Louisiana unless and until the Proceedings are finally determined, The Standard Club UK Ltd. hereby agrees to pay to you such sum or sums as may be awarded by final judgment after all appeals (if any), by the United States District Court, Eastern District of Louisiana in the Proceedings, or agreed between the parties with our consent to be due to you from MSC in respect of the Awards, provided always that The Standard Club UK Ltd.'s total liability hereunder shall not exceed the sum of Two-Hundred and Twenty-Million United States Dollars (US$220,000,000) inclusive of interests and costs.

> This undertaking is given without prejudice to any and all rights or defenses MSC, its agents or affiliates have or may have in the Proceedings.

> . . .

> In the event that the United States District Court, Eastern District of Louisiana concludes (in the Proceedings) that you are not entitled to enforce the Awards in full, or you decide that you wish to discontinue those proceedings and see enforcement elsewhere, you are liberty to return this undertaking, releasing us from any obligation whatsoever hereunder and to then seek to enforce the Awards in another jurisdiction.

> This agreement shall be governed by and construed in accordance with US law and any dispute arising hereunder shall be subject to the exclusive jurisdiction of the United States District Court, Eastern District of Louisiana.

(Rec. Doc. 12-1, at 153–54). First, the LOU states that MSC agrees to pay Conti as long as Conti refrains from bringing proceedings "in any other court other than the United States District Court, Eastern District of Louisiana." Second, the LOU states that MSC "agrees to pay to [Conti] such sum or sums as may be awarded by final judgment after all appeals (if any), by the United States District Court, Eastern District of Louisiana in the Proceedings." Next, the LOU contemplates that if this Court concludes that Conti is entitled to enforce the Awards in full or seek enforcement elsewhere, it is to return the LOU to MSC and release it from any obligations. Finally, the LOU states that "[t]his agreement shall be governed by and construed in accordance with US law and any dispute arising hereunder shall be subject to the exclusive jurisdiction of the United States District Court, Eastern District of Louisiana."

Although MSC issued the LOU "without prejudice to any and all rights or defenses MSC, its agents or affiliates have or may have," taken together, the above statements in the LOU implicitly indicate that MSC consented to the Eastern District of Louisiana's jurisdiction over it. The LOU repeatedly mentions the Eastern District of Louisiana by name, and MSC (1) consents to pay Conti if it refrains from bringing an action anywhere else but the Eastern District of Louisiana; (2) consents to pay Conti any sums that the Eastern District of Louisiana awards; (3) requests that if the Eastern District of Louisiana awards Conti sums, the LOU will be returned; and (4) stipulates that any dispute arising under the LOU "be subject to the exclusive jurisdiction of the United States District Court, Eastern District of Louisiana."

21

Therefore, this Court finds that the LOU issued by MSC waives any personal jurisdiction defense it may have, and MSC has submitted itself to the jurisdiction of this Court.

### CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant, MSC Mediterranean Shipping Company S.A.'s, *Motion to Dismiss* **(Rec. Doc. 9)** is **DENIED.**

New Orleans, Louisiana, this 7th day of September, 2022.


_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE